**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JORGE IBARRA-FLORES,
                                    *Petitioner,*

                    v.

ALBERTO R. GONZALES,* Attorney
General,

                                    *Respondent.*

No. 04-71554

Agency No.
A78-536-420

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 4, 2005—Portland, Oregon

Filed March 6, 2006

Before: Alfred T. Goodwin and Richard R. Clifton,
Circuit Judges, and John S. Rhoades, Sr.,** District Judge.

Opinion by Judge Rhoades

---

*Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

**The Honorable John S. Rhoades, Sr., Senior United States District Judge for the Southern District of California, sitting by designation.

**COUNSEL**

Jaime Jasso, Immigration AppealWorks, Westlake Village, California, for the petitioner.

William C. Erb (argued) and Russel J.E. Verby, United States Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C., for the respondent.

**OPINION**

RHOADES, District Judge:

## I. Introduction

This case comes before us on a petition for review of an order of the Board of Immigration Appeals ("BIA") denying Jorge Ibarra-Flores' ("petitioner") application for cancellation of removal. For reasons set forth below, we grant the petition and remand for further proceedings.

## II. Statement of Relevant Facts

Petitioner, a native and citizen of Mexico, illegally entered the United States in July 1989. On March 21, 1996, petitioner left the United States to visit family in Tijuana, Mexico. On March 23, 1996, petitioner attempted to return to the United States but encountered immigration officials. According to petitioner's testimony, immigration officials told petitioner that because he had been in the United States over six years, he could apply for residence, but he first had to sign an unidentified document. After signing the document, petitioner was told that he had no right to request any type of immigration relief because he had signed a document "quitting all [his] rights in the United States." According to petitioner's Application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents, petitioner returned to Mexico that day. On March 26, 1996, petitioner returned to the United States again, this time without detection by immigration officials. Petitioner has since resided in the United States.

In March 1996, "aliens accrued time toward the 'continuous physical presence in the United States' requirement until they applied for suspension of deportation."[1] *Guadalupe-Cruz*

---

[1] The law subsequently changed. Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, which contained

*v. INS*, 240 F.3d 1209, 1210 n.3 (9th Cir. 2001). "Commence-ment of deportation proceedings had no effect on this accru-al." *Id.* Had petitioner been placed in deportation proceedings in March 1996, he could have applied for suspension of deportation in July 1996, as there is little doubt that petition-er's deportation proceedings would not have concluded prior to July 1996. *See* H.R. REP. 104-469(I), at 122 (1996) (noting how aliens could "frustrate" their removal by requesting and obtaining "multiple continuances, in order to change the venue of their hearing, obtain an attorney, or prepare an appli-cation for relief" and explaining that "delays can stretch out over weeks and months").

On September 25, 2002, petitioner was served with a Notice to Appear alleging that petitioner is an alien who is present in the United States without being admitted or paroled or who arrived at a time and place other than as designated by the Attorney General.

At the hearing before the immigration judge ("IJ"), peti-tioner conceded that he is removable as charged and applied for cancellation of removal pursuant to INA § 240A(b)(1), codified at 8 U.S.C. § 1229b(b)(1).[2] To be entitled to cancella-tion of removal, an alien must have ten years continuous physical presence in the United States. In response to ques-tions by the IJ, petitioner made statements from which the IJ concluded that petitioner had received administrative volun-

a "stop-time" provision. *See* INA § 240A(d)(1), codified at 8 U.S.C. § 1229b(d)(1); *Guadalupe-Cruz v. INS*, 240 F.3d 1209, 1210 n.3 (9th Cir. 2001). Under this "stop-time" provision, "the period of continuous physi-cal presence in the United States shall be deemed to end when deportation proceedings commence." *Guadalupe-Cruz*, 240 F.3d at 1210 n. 3. This "stop-time" provision became effective April 1, 1997. *See Astrero v. INS*, 104 F.3d 264, 266 (9th Cir. 1996).

[2]Cancellation of removal is similar to, and has replaced, suspension of deportation. *See Alcaraz v. INS*, 384 F.3d 1150, 1152-53 (9th Cir. 2004).

tary departure in 1996.[3] Accordingly, the IJ denied the application for cancellation of removal on the ground that petitioner had failed to amass the requisite ten years continuous physical presence in the United States.

Petitioner appealed to the BIA, which affirmed the IJ's decision without opinion on March 16, 2004. Petitioner filed a timely petition for review with this court.

## III.   Analysis

Because the BIA affirmed the IJ's decision without opinion, "we review the IJ's decision, which constitutes the final agency determination." *Karouni v. Gonzales*, 399 F.3d 1163, 1170 (9th Cir. 2005). We "review for substantial evidence the BIA's non-discretionary factual determinations, including the

---

[3]The Attorney General has authority to grant voluntary departures prior to the initiation of removal or deportation proceedings and to grant voluntary departures during the pendency of such proceedings. Prior to 1996, 8 U.S.C. § 1252(b)(4) (1994) provided that " 'in the discretion of the Attorney General . . . deportation proceedings . . . need not be required in the case of any alien who admits to belonging to a class of aliens who are deportable under section 1251 of this title if such an alien voluntarily departs from the United States.' " *Vasquez-Lopez v. Ashcroft*, 343 F.3d 961, 969 n.1 (9th Cir. 2003) (quoting 8 U.S.C. § 1254(b)(4)(1994)). 8 U.S.C. §1254(e)(1) (1994) provided, in relevant part, that the " 'Attorney General may, in his discretion, permit any alien under deportation proceedings . . . to depart voluntarily from the United States at his own expense in lieu of deportation." *See Vasquez-Lopez*, 343 F.3d at 969 n.1 (quoting 8 U.S.C. § 1254(e)(1) (1994)). After 1996, the authority to grant voluntary departure in both situations was transferred to a single section, 8 U.C. § 1229c(a)(1), which provides, in relevant part, that " '[t]he Attorney General may permit an alien voluntarily to depart the United States . . . under this subsection, in lieu of being subject to proceedings under section [1229a of this title] or prior to the completion of such proceedings.' " *Vasquez-Lopez*, 343 F.3d at 969 n.1 (quoting 8 U.S.C. § 1229c(a)(1)). "While the precise terms of the Attorney General's statutory authority to grant voluntary withdrawal have varied during the period here relevant, the character of departures pursuant to a grant of voluntary departure has not materially changed." 343 F.3d at 969 n.1.

determination of continuous presence." *Lopez-Alvarado v. Ashcroft*, 381 F.3d 847, 850-51 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Monjaraz-Munoz v. INS*, 327 F.3d 892, 895 (9th Cir.), *amended by* 339 F.3d 1012 (9th Cir. 2003) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[1] On this record, the IJ's conclusion that petitioner is ineligible for cancellation of removal because he received administrative voluntary departure is not supported by substantial evidence. We have held that an alien who departs the United States pursuant to the formal process known as administrative voluntary departure interrupts his physical presence in the United States so that, should the alien return, he must begin anew the process of accumulating physical presence for immigration purposes. *Vasquez-Lopez v. Ashcroft*, 343 F.3d 961 (9th Cir. 2003) (per curiam). However, not all departures after contact with immigration officials constitute administrative voluntary departures that interrupt an alien's continuous physical presence in the United States. As we have recently recognized, when an alien is simply "turned around at the border" by immigration officials, the alien's departure from the United States does not serve to interrupt the alien's continuous physical presence. *See Tapia v. Gonzalez*, 430 F.3d 997 (9th Cir. 2005).

[2] Here, one can only speculate as to whether petitioner received administrative voluntary departure. No voluntary departure form was produced, and the only testimony that was presented on this issue was petitioner's own confusing testimony. Specifically, when asked whether he had ever received voluntary departure, petitioner answered:

    A.   I think once in 1996, but I got no option.

Q.   You got what?

A.   No option when I was detained by immigration officer and the officer told me to sign off the document, go outside and talk to the immigration offices right at the border and they will help me out because I've been here six years and some months, which would allow me apply for residence. So I did what the officer told me. I went outside of the United States, and when I went to the offices the officer told me, I was told that I was crazy and I got no right to request anything, that I had signed document quitting all my rights in the United States.

Although petitioner testified that he signed some type of document, it is far from clear that petitioner signed a voluntary departure form. Petitioner's testimony is not, by itself, substantial evidence that petitioner did in fact receive administrative voluntary departure.

[3] Moreover, even if petitioner signed a voluntary departure form and departed accordingly, there is not substantial evidence in the present record that would support the conclusion that petitioner knowingly and voluntarily accepted administrative voluntary departure.[4] Although a voluntary

---

[4]Although the issue of whether petitioner knowingly and voluntarily accepted administrative voluntary departure is not "specifically and distinctly" raised in the opening brief, we find good cause for addressing this argument. *See United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992) (explaining that we will consider issues raised for the first time in a reply brief for " 'good cause shown' " (quoting Fed. R. App. P. 2)). The government had an opportunity to address this issue at oral argument. Moreover, the issue of whether petitioner knowingly and voluntarily accepted voluntary departure is inextricably intertwined with the issue of whether there is substantial evidence supporting the IJ's conclusion that petitioner suffered an administrative voluntary departure that precludes him from meeting the continuous physical presence requirement.

departure under "threat" of deportation constitutes a break in continuous physical presence, *Vasquez-Lopez*, 343 F.3d at 970, as our sister circuits have recognized, "before it may be found that a presence-breaking voluntary departure occurred, the record must contain some evidence that the alien *was informed of and accepted its terms*." *Reyes-Vasquez v. Ashcroft*, 395 F.3d 903, 908 (8th Cir. 2005) (emphasis added). As the Eighth Circuit has explained, the use of the phrase "under threat of deportation"

> implies that there is an *expressed and understood* threat of deportation. When an alien is legally permitted to depart voluntarily, he should "leave with the knowledge that he does so in lieu of being placed in proceedings" and therefore has no legitimate expectation that he may reenter and resume continuous presence. *In re Romalez-Alcaide*, 23 I. & N. Dec. 423, 429 (2002) (en banc).

*Reyes-Vasquez*, 395 F.3d at 907 (emphasis added) (alteration in original).

**[4]** Most recently, we have held that the type of agreement to depart that terminates an alien's continuous physical presence is a formal one "whereby the terms and conditions of [the alien's] departure *were clearly specified*." *Tapia*, 430 F.3d at 1004 (emphasis added). Although *Tapia* did not involve a claim that the alien was misled into signing a voluntary departure form and voluntarily departing, *Tapia*'s reasoning is nonetheless applicable here. As we explained in *Tapia*, an agreement to accept voluntary departure is akin to a plea bargain in which the alien gives up any expectation that the alien can " 'illegally reenter and resume a period of continuous physical presence.' " *Id.* at 1002 (quoting *Vasquez-Lopez*, 343 F.3d at 973 (quoting *In re Romalez-Alcaide*, 23 I. & N. Dec. at 429)). Moreover, if voluntary departure is accepted in lieu of being placed in deportation or removal proceedings, the alien agrees to relinquish the right to present a claim for

relief that might otherwise allow the alien to stay in the United States. Given the consequences of an agreement to accept voluntary departure, such an agreement, like a plea agreement, should be enforced against an alien only when the alien has been informed of, and has knowingly and voluntarily consented to, the terms of the agreement.

**[5]** Petitioner's testimony before the IJ suggests that, due to the misrepresentations of immigration officers, petitioner did not knowingly and voluntarily accept administrative voluntary departure in lieu of being placed in deportation proceedings. There was no testimony to the contrary. Petitioner's testimony is plausible because, due to the state of immigration law at the time, it would have behooved petitioner to be placed in deportation proceedings in March 1996.

**[6]** At oral argument, petitioner suggested that it would be appropriate to remand this matter for further hearing before the IJ on the issue of whether petitioner accepted administrative voluntary departure and, if so, whether he did so knowingly and voluntarily. We conclude that the IJ should be given the first opportunity to assess the consequences of petitioner's departure under the "knowing and voluntary" standard we announce today. *Cf. Reyes-Vasquez*, 395 F.3d at 909 (remanding for specific factual findings on the issue of whether the alien was " 'simply returned to the border' without voluntarily departing under an expressed threat of deportation or removal proceedings" after determining that the record was insufficient to establish that a voluntary departure "under threat of deportation" occurred). Upon remand, the IJ shall take additional evidence and testimony as necessary and shall make factual findings as to whether petitioner received administrative voluntary departure and, if so, whether he knowingly and voluntarily consented thereto.

**[7]** Finally, petitioner argues that the IJ violated his due process rights by refusing to order the Immigration and Naturalization Service ("Service") to produce a voluntary depar-

ture form for petitioner. Claims of due process violations in deportation proceedings are reviewed de novo. *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000). "The Fifth Amendment guarantees due process in deportation proceedings." *Id.* Thus, "an alien who faces deportation is entitled to a full and fair hearing of his claims and a reasonable opportunity to present evidence on his behalf." *Id.* The BIA's decision will be reversed on due process grounds if (1) the proceeding was " 'so fundamentally unfair that the alien was prevented from reasonably presenting his case,' " *id.* (quoting *Platero-Cortez v. INS*, 804 F.2d 1127, 1132 (9th Cir. 1986)), and (2) the alien demonstrates prejudice, "which means that the outcome of the proceeding may have been affected by the alleged violation," *id.*

**[8]** Here, it was reasonable for petitioner to seek evidence in the Service's possession in an attempt to meet his burden of demonstrating that he meets the continuous physical presence requirement. Had the Service failed to produce a voluntary departure form for petitioner after being ordered to do so, this would have been further evidence suggesting that petitioner's continuous physical presence in the United States was not interrupted by an administrative voluntary departure. For this reason, the outcome of these proceedings may have been affected if the requested discovery had been ordered. Accordingly, upon remand the IJ shall order the production of all forms referencing petitioner's departure from the United States on March 23, 1996.

## IV.   Conclusion

This matter is remanded for further proceedings consistent with this opinion.

PETITION GRANTED; CASE REMANDED WITH INSTRUCTIONS.