**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| BRYAN VINCENT I. PAGAYON, a.k.a. Deny Moniker, a.k.a. Bryan Vincent Idhaw,<br><br>      *Petitioner,*<br><br>    v.<br><br>ERIC H. HOLDER Jr., Attorney General,<br><br>      *Respondent.* | Nos. 07-74047<br>and<br>07-75129<br><br>Agency No.<br>A45-622-497<br><br>ORDER<br>GRANTING<br>REHEARING,<br>WITHDRAWING<br>OPINION AND<br>DENYING<br>REHEARING EN<br>BANC AND<br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 13, 2011—San Francisco, California

Filed December 8, 2011

Before: Alex Kozinski, Chief Judge, N. Randy Smith,
Circuit Judge, and Frederic Block, District Judge.*

Per Curiam Opinion

---

*The Honorable Frederic Block, Senior United States District Judge for the Eastern District of New York, sitting by designation.

## COUNSEL

Victor Jih and Victoria Schwartz (argued), O'Melveny & Myers LLP, Los Angeles, California; Jessica Barclay-Strobel

(argued), UCLA School of Law Ninth Circuit Clinic, Los, Angeles, California, for the petitioner.

Michael C. Heyse, United States Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C., for the respondent.

## ORDER

The petition for panel rehearing is granted. The Opinion filed June 24, 2011, slip op. 8617, and appearing at 642 F.3d 1226 (9th Cir. 2011), is withdrawn. It may not be cited as precedent by or to this court or any district court of the Ninth Circuit. A new Opinion denying the petitions for review is being filed concurrently with this Order.

Chief Judge Kozinski and Judge Smith have voted to deny the petition for rehearing en banc, and Judge Block has so recommended. The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. *See* Fed. R. App. P. 35. Accordingly, the petition for rehearing en banc is denied.

No further petitions for rehearing will be accepted.

## OPINION

PER CURIAM:

Bryan Vincent I. Pagayon petitions for review of an order of the Board of Immigration Appeals directing his removal, as well as the Board's order denying reconsideration. We deny the petitions.

I

Pagayon, a native of the Philippines, was a legal permanent resident of the United States. On November 30, 2006, he was

placed into removal proceedings based on a notice to appear alleging that he had been convicted of violations of (1) section 12021(a)(1) of the California Penal Code, relating to possession of firearms by felons and drug addicts, and (2) section 11377(a) of the California Health and Safety Code, relating to possession of controlled substances.

At an initial hearing, the IJ asked Pagayon to admit or deny the allegations of the notice to appear. In response, Pagayon admitted as "true" that he was

- "not a citizen or national of the United States but . . . a native and citizen of the Philippines";

- "admitted to the United States, Los Angeles, California, August 23, 1996 as an immigrant";

- "convicted in Superior Court, California, Los Angeles County, possession of firearm by felon or addict in violation of 12021(a)(1), California Penal Code"; and

- "convicted in the Superior Court, California, Los Angeles County, possession of a controlled substances, methamphetamine, [a] felony, in violation of California Health and Safety Code 11377(a) ."

The government then produced an abstract of judgment and the two informations that ostensibly underlay the convictions. The IJ summarized the documents—copies of which were given to Pagayon—as follows:

They've given to you and to me a copy of an abstract of judgment list[ing] as Count A-1, possession, firearm, felon or addict. . . . Two-year sentence. . . .Count B-2, possession controlled substance.

Attached to this is a copy of an information, possession of firearm by a felon, one prior, in violation of Penal Code 12021(a)(1), felony. . . . There's another information following. Count 2 there was listed as possession, controlled substance, 11377(a), listing it as methamphetamine. It looks like on the abstract of judgment it indicates convicted by jury as to the first count, and as to possession of controlled substance, it looks like it was based upon a plea.

When the IJ asked, "Are these your convictions?" Pagayon responded, "Yes, Your Honor." Without objection, the IJ received the abstract of judgment and informations as evidence.

Pagayon initially admitted that his convictions rendered him removable and applied for relief from removal. Thus, the IJ found the charges of removability established by Pagayon's "admissions and concession, together with the documentary evidence in support of it." The hearing was adjourned to allow Pagayon time to complete his application for relief from removal.

At his next appearance, Pagayon raised a claim of citizenship through his maternal grandmother. A successor IJ allowed Pagayon to belatedly deny "Allegation 1"—the allegation that he was not a United States citizen or national—and "vacat[ed] all sustaining of charges" of removability by his predecessor. He did not, however, change or vacate Pagayon's responses to the allegations regarding his convictions. Thus, at the conclusion of the proceeding, the new IJ identified the issues for hearing as "one citizenship; two . . . withholding of removal and deferral of removal."

The IJ conducted an evidentiary hearing on May 16, 2007. At the outset, he "re-sustain[ed]" the government's allegations and, accordingly, found Payagon removable. Although the IJ promised to address Pagayon's claim of citizenship, Pagayon

did not pursue it. Instead, he testified only as to his claim for relief from removal. Because the IJ did not make an adverse credibility determination, we take that testimony as true. *See Kalubi v. Ashcroft*, 364 F.3d 1134, 1137 (9th Cir. 2004).

Pagayon's father worked as an investigator for the Philippines' National Bureau of Investigation. He was shot to death on November 27, 1984. Pagayon, then seven years old, recalled hearing family members and his father's co-workers opining that his father had been murdered by members of the National Police (NP) in the course of an investigation into the NP's involvement in crime syndicates. No one was arrested or charged in connection with the death, and an official investigation had "no result."

Following his father's death, Pagayon saw a group of people, some wearing NP uniforms, "patrolling" the streets around his grandmother's house; someone later called the house to tell "family members not to file a complaint for [his] dad." When Pagayon's aunt tried to bring the circumstances of her brother's death to light, she was shot (though not fatally). Shortly thereafter, one of Pagayon's uncles pulled him out of school and told him the family needed to relocate. This process repeated itself often, triggered by warnings from family friends in the Philippine government that NP retaliation was imminent. It stopped only when Pagayon and his immediate family came to the United States in 1996; other family members emigrated to other countries.

At the conclusion of his testimony, Pagayon opined that he could not return to the Philippines because those responsible for his father's murder would find out and "assume that [he was] back for revenge [or] to expose them from whatever scheme that they're doing."

In an oral decision rendered on May 16, 2007, the IJ concluded that the firearm conviction was an "aggravated felony" that rendered Pagayon ineligible for asylum. The IJ next

addressed whether that conviction was also a "particularly serious crime" disqualifying Pagayon from withholding of removal. He concluded that "the nature and circumstances of the offense" and the length of the sentence showed that Pagayon "can be considered a danger to the safety of persons and property in the United States as well as a danger to the community of which he is a member." Reaching the merits of the withholding claim in the alternative, the IJ accepted Pagayon's claim that his father had been murdered by the NP, but concluded that there was

> absolutely no evidence to indicate that [Pagayon] would be in any danger of returning to the Philippines at this date, and therefore he would not meet the burden of proving it is more likely than not that he would be so persecuted on the basis of his race, religion, nationality, membership in a particular social group, or because of an expressed political opinion or political opinion imputed to him by the persecutors.

The IJ rejected Pagayon's claim for relief under the Convention Against Torture (CAT) for essentially the same reasons.

Pagayon appealed to the Board. In his notice of appeal, he claimed that the IJ (1) "failed to take consideration of the totality of the evidence presented and failed to apply the correct legal standard to the facts and evidence," and (2) "denied the Respondent of a full and fair hearing in violation of due process of law." Pagayon did not file a brief. The Board summarily affirmed the IJ's decision.

Pagayon then filed a petition for review with this Court, and simultaneously filed a "motion to reconsider and remand" with the Board. In the latter, he argued (1) that the evidence presented to the IJ did not establish the nature of his convictions, (2) that the IJ failed to apply the proper factors in his "particularly serious crime" assessment, (3) that the IJ vio-

lated due process, and (4) that the IJ did not apply the correct law to his CAT claim. The Board denied the motion on the ground that those "specific contentions" were raised for the first time on reconsideration. Pagayon thereupon filed a second petition for review, which we consolidated with the first.

## II

Before turning to the merits, we must address the government's argument that Pagayon failed to exhaust his claims before the Board. "A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right . . . ." 8 U.S.C. § 1252(d)(1). This requirement "generally bars us, for lack of subject-matter jurisdiction, from reaching the merits of a legal claim not presented in administrative proceedings below." *Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004). If the petitioner does not file a brief before the Board, then we look to the notice of appeal to determine which issues he exhausted. *See Abebe v. Mukasey*, 554 F.3d 1203, 1208 (9th Cir. 2009).

A petitioner must specify which issues he intends to raise on appeal; a "general challenge to the IJ's decision" will not suffice. *Zara v. Ashcroft*, 383 F.3d 927, 930 (9th Cir. 2004). On the other hand, the petitioner is not limited to raising issues in exactly the same terms as they were presented to the Board. *See Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 873 (9th Cir. 2008). We are particularly careful to give claims raised by *pro se* petitioners their most liberal construction. *See id*. Under these forgiving standards, we are satisfied that Pagayon's notice of appeal gave the Board an adequate opportunity to pass on the arguments he presents here.

## III

"When the BIA summarily affirms the IJ's decision, we review the IJ's decision as the final agency action." *See Zeha-*

*tye v. Gonzales*, 453 F.3d 1182, 1184 (9th Cir. 2006). Pagayon challenges that decision on three grounds. He argues (1) that the IJ erred in finding him removable, (2) that the IJ erred in finding him ineligible for withholding of removal, and (3) that the IJ violated his due-process rights.

## A.  Removability

Having abandoned his claim of citizenship, Pagayon's sole challenge to the IJ's removability determination is that the government failed to prove that his convictions rendered him removable. That is "a legal question subject to de novo review." *Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 909 (9th Cir. 2004).

**[1]** Our analysis is governed by *Perez-Mejia v. Holder*, ___ F.3d ___, slip op. 20391 (9th Cir. 2011), which was decided shortly after oral argument in this case. Harmonizing our prior cases concerning consideration of an alien's admissions and concessions, *Perez-Mejia* drew a distinction between the "pleading" and "evidentiary" stages of a removal proceeding. *See id.* at 20404 (citing 8 C.F.R. § 1240.10(c), (d)). At the pleading stage, the IJ asks the alien "whether he or she admits or denies the factual allegations and his or her removability under the charges contained therein." 8 C.F.R. § 1240.10(c). The IJ may accept admissions and concessions at that stage; if they are sufficient to establish removability, "no further evidence concerning the issues of fact admitted or law conceded is necessary." *Perez-Mejia*, slip op. at 20411. Indeed, an alien's concession of removability or admission of facts establishing removability, if accepted by the IJ, completely "relieve[s] the government of the burden of producing evidence." *Id.* at 20315.

**[2]** If, on the other hand, "an alien's admissions or concession leave material issues in dispute, or the IJ is not satisfied with an admission or concession, the proceeding moves to the § 1240.10(d) evidentiary stage." *Id.* at 20411. If, at that stage,

the "modified categorical approach" is applicable, "the IJ may rely on facts admitted at the pleading stage, but may not consider any further statements made by the alien unless they are contained in the specific set of documents that are part of the record of conviction." *Id.*[1]

The IJ found Pagayon removable based on the government's allegations (1) that his firearm conviction was for an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii), and (2) that his drug conviction related to a controlled substance under 8 U.S.C. § 1227(a)(2)(B)(i). Since either allegation, if established, is sufficient to require removal, we opt to address only the second.[2]

**[3]** Section 1127(a)(2)(B)(i) "requires the government to prove that the substance underlying an alien's state law conviction for possession is one that is covered by Section 102 of the [federal Controlled Substances Act (codified as 18 U.S.C. § 802)]." *Ruiz-Vidal v. Gonzales*, 473 F.3d 1072, 1076 (9th Cir. 2007). Accordingly, the government alleged that Pagayon was convicted of possession of methamphetamine, which is so covered. *See* 21 U.S.C. §§ 802(6), 812 sched. II(c)). Pagayon's admission of the allegation that his drug offense involved methamphetamine was a "pleading stage" admission. By contrast, his admission that he was convicted of the crimes charged in the informations offered by the government was an "evidentiary stage" admission. Under *Perez-Mejia*, the IJ could properly consider the former, but not the latter, in determining whether Pagayon was removable.

---

[1]The modified categorical approach applies when the simple fact of conviction of a state-law crime does not automatically establish removability under federal law. *See Parrilla v. Gonzales*, 414 F.3d 1038, 1043 (9th Cir. 2005).

[2]As a result, we need not address whether, as a consequence of the antique exception to the federal definition of "firearm," *see* 18 U.S.C. § 921(a)(3)(D), the government must allege and prove that a conviction under a state law lacking a similar exception involved a non-antique.

As *Perez-Mejia* recognized, removal proceedings are "not always neatly divided into pleading and evidentiary stages." Slip op. at 20413 n.10. That is certainly the case here. After asking Pagayon to admit or deny the government's allegations, the initial IJ detoured into the evidentiary phase of the proceedings by asking Pagayon to confirm that his convictions were for the crimes charged in the informations he entered into evidence. Further muddying the waters, the successor IJ returned to the pleadings phase to allow Pagayon to withdraw his concession of removability and pursue his claim of citizenship.

**[4]** Nevertheless, it is clear that Pagayon made a "pleading stage" admission that he had been convicted of a drug offense involving methamphetamine; that admission alone established his removability. The subsequent colloquy regarding the informations and the withdrawal of the concession of removability do not suggest that either IJ believed that the issue required further evidence. *Cf. Perez-Mejia*, slip op. at 20412-13. To the contrary, the successor IJ's list of the issues requiring an evidentiary hearing included only citizenship and relief from removal. That he did not also list the nature of Pagayon's convictions demonstrates that he was satisfied that Pagayon's admission had relieved the government of its burden of proof on that issue.

Finally, we are aware that Pagayon was proceeding *pro se*, while the alien in *Perez-Mejia* was represented by counsel. *See id.* at 20397. However, the regulation that forms the basis for *Perez-Mejia*'s pleading stage/evidentiary stage dichotomy allows an IJ to accept admissions from an unrepresented alien except in circumstances not pertinent here. *See* 8 C.F.R. § 1240.10(c) ("The immigration judge shall not accept an admission of removability from an unrepresented respondent who is incompetent or under the age of 18 and is not accompanied by an attorney or legal representative, a near relative, legal guardian, or friend; nor from an officer of an institution in which a respondent is an inmate or patient.").

B.   Relief from Removal

Because we have not addressed whether Pagayon's firearm conviction involved a removable "aggravated felony," we cannot, as the IJ did, conclude that Pagayon is automatically ineligible for asylum, *see* 8 U.S.C. § 1158(b)(2), and ineligible for withholding of removal because the conviction was for a "particularly serious crime," *id*. § 1231(b)(3)(B)(ii).[3] Instead, we turn to the IJ's alternative conclusion that Pagayon failed to meet his burden of proving entitlement to withholding.

**[5]** "To qualify for withholding of removal, an alien must demonstrate that 'it is more likely than not that he would be subject to persecution on one of the specified [protected] grounds.' " *Al-Harbi v. INS*, 242 F.3d 882, 888 (9th Cir. 2001) (quoting *INS v. Stevic*, 467 U.S. 407, 429-30 (1984)). Factual findings concerning entitlement to withholding are reviewed for substantial evidence, and must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Zhou v. Gonzales*, 437 F.3d 860, 864-65 (9th Cir. 2006) (citations and internal quotation marks omitted). They may be reversed only if the evidence is "such that a reasonable fact-finder would have been compelled" to reach a contrary result. *Id*. at 865 (citations and internal quotation marks omitted).

**[6]** The record does not compel the conclusion that Pagayon will face persecution in the Philippines for two reasons. First, notwithstanding Pagayon's relocation within the Philippines 15 years ago, he has not demonstrated that he would face reprisals from the NP if he returned now. His sister, for instance, continues to live there unmolested.

**[7]** Second, Pagayon has not conclusively established that the NP would target him on a protected ground. As the IJ rec-

---

[3]Pagayon has abandoned his claim for relief under CAT.

ognized, withholding is available only to those who face persecution on account of race, religion, nationality, membership in a particular social group, or an actual or imputed political opinion. *See Sharma v. Holder*, 633 F.3d 865, 869-70 (9th Cir. 2011). Although Pagayon casts his claim as one based on imputed political opinion, his narrative to the IJ described the NP's motive as an attempt to discourage his family from exposing or avenging his father's murder. A personal dispute is not, standing alone, tantamount to persecution based on an imputed political opinion. *See Molina-Morales v. INS*, 237 F.3d 1048, 1051-52 (9th Cir. 2001) (personal disputes not grounds for asylum unless connected to a protected ground).[4]

That Pagayon is not entitled to withholding does not necessarily mean that he cannot satisfy the less stringent "well-founded fear" standard for asylum. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987) ("[T]o show a 'well-founded fear of persecution,' an alien need not prove that it is more likely than not that he or she will be persecuted in his or her home country."). The IJ did not address Pagayon's asylum claim on the merits, relying instead on the firearm conviction to find him ineligible. We need not remand, however, because asylum, like withholding, protects only those who risk persecution based on a protected ground. *See Sharma*, 633 F.3d at 869. Thus, even if Payagon could show a well-

---

[4]Pagayon argues that our second reason runs afoul of *INS v. Orlando Ventura*, 537 U.S. 12 (2002), in which the Supreme Court held that a court of appeals should not, except in rare circumstances, determine de novo that an alien is entitled to relief from removal. *See id.* at 16 ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands."). Even assuming that *Ventura* applies with equal force to a *denial* of a petition for review, it does not require remand here. In addition to concluding that Pagayon faced no danger in the Philippines, the IJ stated that he therefore "would not meet the burden of proving it is more likely than not that he would be so persecuted on the basis of his race, religion, nationality, membership in a particular social group, or because of an expressed political opinion or political opinion imputed to him by the persecutors."

founded fear of reprisals by the NP, he could not, as explained above, establish that the reprisals would be based on an imputed political opinion.

## C. Due Process

Pagayon argues that the IJ violated his due-process rights by not allowing him time to submit a letter recapitulating his oral testimony, and by refusing to take telephonic testimony from family members.[5] We review this claim de novo. *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620 (9th Cir. 2006).

Assuming that one or both of the IJ's decisions were error, they do not amount to due-process violations unless they deprived Pagayon of "a full and fair hearing" of his claims. *Zolotukhin v. Gonzales*, 417 F.3d 1073, 1075 (9th Cir. 2005). In other words, Pagayon must show prejudice, "which means that the outcome of the proceeding may have been affected by the alleged violation." *Reyes-Melendez v. INS*, 342 F.3d 1001, 1007 (9th Cir. 2003).

[8] Prejudice may be inferred "even absent any allegations as to what the petitioner or his witnesses might have said." *Zolotukhin*, 417 F.3d at 1077 (citing *Colmenar v. INS*, 210 F.3d 967, 972 (9th Cir. 2000)). In this case, however, we can find no connection between the additional evidence and the outcome of the proceeding. Since the IJ accepted Pagayon's version of the facts, corroborating evidence was not necessary. And since that version of the facts portrays a personal vendetta against someone intending to expose the NP's misdeeds, Pagayon cannot plausibly claim that the additional evidence would have contradicted his own testimony by suggesting a different motive for his father's murder.

---

[5]He also argues that the IJ was biased against him. Because this claim is offered strictly as a basis for reassignment to a different IJ in case of remand, we do not address it.

## IV

The IJ was entitled to rely on Pagayon's pleading-stage admission that he had been convicted of a removable drug offense. Pagayon failed to carry his burden of proving that he is entitled to relief from removal, or that the IJ violated his due-process rights. Accordingly, his petitions for review are

DENIED.