

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JOSE MANZANAREZ-SANTOS,

Petitioner,

v.

JEFFERSON B. SESSIONS III, Attorney General,

Respondent.

No.    15-70148

Agency No. A088-807-738

ORDER

Before:  WALLACE, TASHIMA, and WATFORD, Circuit Judges.

The respondent's motion to amend is GRANTED.  The memorandum disposition filed on November 14, 2017, is amended as follows:

At page four, lines 2–3, change <on remand the immigration judge shall consider whether> to <we remand to the BIA with instructions to remand to the immigration judge to determine whether>.

Following amendment, the mandate shall issue forthwith.

FILED

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

JAN 11 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSE MANZANAREZ-SANTOS, | No. 15-70148 |
| Petitioner, | Agency No. A088-807-738 |
| v. | |
| JEFFERSON B. SESSIONS III, Attorney General, | AMENDED MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted September 12, 2017
San Francisco, California

Before: WALLACE, TASHIMA, and WATFORD, Circuit Judges.

**1.** The Board of Immigration Appeals (BIA) erred in denying Jose

Manzanarez-Santos' application for cancellation of removal. An alien's

acceptance of voluntary departure breaks his continuous physical presence only if

the decision to depart was knowing and voluntary. *See Ibarra-Flores v. Gonzales,*

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

439 F.3d 614, 619 (9th Cir. 2006). Even if one refuses to credit Manzanarez-Santos' testimony that he was coerced into departing, as the BIA did, the record nonetheless "must contain some evidence that the alien was *informed of and accepted*" the terms of voluntary departure. *Id.* (emphasis in original) (citation omitted). There is no such evidence in this case. Here, as in *Ibarra-Flores*, the government was not able to produce a signed voluntary departure form. *See id*. Nor is there any other evidence indicating that Manzanarez-Santos was advised of the consequences of voluntary departure or that he accepted voluntary departure in lieu of being placed in removal proceedings.

The government's reliance on notations from the Utah state court's record of conviction is misplaced. At most, these bare notations are evidence that Manzanarez-Santos knew he would be removed from the United States through some unspecified process, and that he could not reenter unlawfully. But they are not substantial evidence that Manzanarez-Santos was informed of and accepted voluntary departure. Indeed, the notations make no reference to voluntary departure at all.

*Zarate v. Holder*, 671 F.3d 1132 (9th Cir. 2012), on which the dissent relies, is distinguishable. There, an alien was arrested for possessing a false identification document when entering the United States. *Id*. at 1133. He was convicted in

federal court and returned to Mexico. We held these proceedings broke the alien's continuous physical presence because the conviction "was a formal, documented process that was the functional equivalent of an adjudication of inadmissibility." *Id*. at 1136 (internal quotation marks omitted).

While Manzanarez-Santos was subject to a formal proceeding in state court before his return to Mexico, that proceeding was not "the functional equivalent of an adjudication of inadmissibility." *Id*. In *Zarate*, the court emphasized that the defendant pleaded guilty to an offense that "directly relat[ed] to his attempted reentry." *Id*. at 1137. The resolution of the criminal charge effectively resolved the question of admissibility as well. Not so here. The offense to which Manzanarez-Santos pleaded guilty, making a false credit report, is unrelated to his immigration status or the circumstances of his entry into the United States. And even if the Utah court proceeding did purport to determine Manzanarez-Santos' legal status, it could not constitute an adjudication of inadmissibility. Unlike in *Zarate*, the proceeding here was before a *state* court, not a federal court. It is well settled that state entities "enjoy no power with respect to the classification of aliens." *Plyler v. Doe*, 457 U.S. 202, 225 (1982). Accordingly, *Ibarra-Flores*, not *Zarate*, guides this court's analysis.

Because it is undisputed that Manzanarez-Santos otherwise satisfies the continuous physical presence requirement, we remand to the BIA with instructions to remand to the immigration judge to determine whether Manzanarez-Santos meets the remaining requirements to be eligible for cancellation of removal under 8 U.S.C. § 1229b(b).

**2.** Substantial evidence supports the BIA's conclusion that a protected ground is not one central reason for Manzanarez-Santos' feared persecution. A motive is a central reason if that reason, "standing alone," would lead the persecutor to harm the applicant. *Parussimova v. Mukasey*, 555 F.3d 734, 741 (9th Cir. 2009). While the Los Zetas cartel targeted members of Manzanarez-Santos' family in Mexico, the cartel's central motive appears to have been desire for money. Cartel members kidnapped Manzanarez-Santos' aunt, apparently at random, and demanded a ransom. And when the cartel members targeted other members of the family, they continued to demand that the ransom be paid. Absent this financial motive, there is no evidence that the cartel would have kidnapped and killed members of Manzanarez-Santos' family. Those financial motives do not bear the requisite nexus to a protected ground. *Zetino v. Holder*, 622 F.3d 1007, 1015–16 (9th Cir. 2010).

Since the BIA properly denied Manzanarez-Santos' asylum application for failure to establish nexus, we need not address whether the application was timely filed.

**3.** The BIA denied Manzanarez-Santos' application for withholding of removal under the incorrect legal standard. Asylum applicants must demonstrate that a protected ground is "one central reason" for their persecution, but applicants for withholding of removal need only show that a protected ground is "a reason" for their persecution. *Barajas-Romero v. Lynch*, 846 F.3d 351, 360 (9th Cir. 2017). The "a reason" standard is "less demanding." *Id*. Because the BIA erroneously considered Manzanarez-Santos' withholding application under the "one central reason" standard, we remand for reconsideration under the correct standard.

**PETITION GRANTED IN PART; DENIED IN PART; and REMANDED**.

*Manzanarez-Santos v. Sessions*, No. 15-70148

WALLACE, Circuit Judge, dissenting in part:

I concur in parts 2 and 3 of the disposition but dissent from part 1.

To be eligible for cancellation of removal, an applicant must establish at least ten years continuous physical presence in the United States immediately preceding the date of application. 8 U.S.C. § 1229b(b)(1)(A). Our case law provides several ways in which this period of continuous physical presence may be interrupted, one of which is when the process culminating in an alien's departure is "sufficiently formal" to constitute a break in continuous physical presence. *Zarate v. Holder*, 671 F.3d 1132, 1138 (9th Cir. 2012). Because I conclude that Manzanarez-Santos' conviction in state court and subsequent departure was a sufficiently formal process to terminate his continuous physical presence, I respectfully dissent from part 1 of the majority's disposition.

My disagreement with the majority is, at root, a disagreement over the proper frame of analysis. The majority treats this case as a "voluntary departure" case controlled by our decision in *Ibarra-Flores v. Gonzales*, 439 F.3d 614 (9th Cir. 2008). In *Ibarra-Flores*, petitioner appealed from an immigration judge's (IJ) determination that he accepted "administrative voluntary departure" sufficient to interrupt his continuous physical presence by signing an unidentified document. We held this conclusion was not supported by substantial evidence because the

record contained no indication petitioner had "knowingly and voluntarily" consented to the terms of a voluntary departure agreement. *Id.* at 620. We remanded to the IJ with instructions to take additional evidence and testimony as to whether petitioner knowingly and voluntarily consented to voluntary departure. *Id.*

The instant appeal is not an *Ibarra-Flores* type case. Instead, the issue presented here is whether substantial evidence supports the Board of Immigration Appeals' (BIA) determination that the process leading to Manzanarez-Santos' departure was sufficiently formal to break his continuous physical presence. That makes this case more akin to *Zarate v. Holder*, 671 F.3d 1132 (9th Cir. 2012), than to *Ibarra-Flores*. It is *Zarate* that should guide our analysis.

In *Zarate*, petitioner argued that the process culminating in his departure from the United States was not the sort of formal, documented process that breaks continuous physical presence. *Id.* at 1135. We disagreed. The petitioner in *Zarate* had been arrested while attempting to reenter the United States and was convicted in federal district court of possession of a false identification document. *Id.* at 1133. The petitioner's sentence was conditioned, in part, on the expectation that immigration authorities would "cause the defendant to leave" the country. *Id.* Petitioner then served five days in jail, was returned to INS custody, and was then transported back to the Mexican border and released. We held this sequence of

2

events provided substantial evidence for the Board's determination that petitioner's departure was "sufficiently formal" to constitute a break in his continuous physical presence. *Id.* at 1138.

I would hold the same in this case. Here, Manzanarez-Santos (who was represented by counsel) pleaded guilty in Utah state court to filing a false credit report. Although the offense was not an immigration offense, Manzanarez-Santos' immigration status was very much intertwined with his conviction and sentencing. For example, Manzanarez-Santos stated he was aware at the time of his appearance before the state judge that INS had an immigration detainer on him. In addition, when the judge sentenced Manzanarez-Santos, he specifically took into account Manzanarez-Santos' anticipated removal by federal immigration authorities. Furthermore, the conditions of Manzanarez-Santos' probation provided that he was "not [to] enter the United States without legal authorization." Finally, after serving his time in jail, Manzanarez-Santos was turned over to the INS, accepted voluntary departure, and returned to Mexico. In my view, this sequence of events was sufficiently formal to constitute a break in Manzanarez-Santos' continuous physical presence.

Viewing this case through the lens of *Zarate* renders beside the point the majority's conclusion that Manzanarez-Santos did not knowingly and voluntarily

3

accept voluntary departure. Indeed, in *Zarate* we rejected this precise argument by petitioner, explaining that the issue in the case was not whether petitioner departed voluntarily but whether "the proceedings that did occur were sufficient to terminate his continuous physical presence." *Zarate*, 671 F.3d at 1137, n.5. Such is the case here. The Board concluded that the sequence of events leading to Manzanarez-Santos' departure was "a sufficiently documented and formalized process" that interrupted his continuous physical presence. The record does not compel a contrary conclusion.

The majority argues that *Zarate* is inapposite because there we concluded that petitioner's conviction in federal court and subsequent departure was the "functional equivalent of an adjudication of inadmissibility." *Id.* at 1136 (internal quotation marks omitted). It is true that an implicit finding of inadmissibility formed part of our rationale in *Zarate*. But I do not read *Zarate* to *require* the Board to make a finding of inadmissibility before concluding that a process resulting in an alien's departure was sufficiently formal to terminate continuous physical presence. Nor did *Zarate* hold that only proceedings in federal court meet the requisite level of formality. Instead, what *Zarate* requires is a holistic, context-sensitive inquiry into the degree of formality of the process. Although an adjudication of inadmissibility will certainly suggest sufficient formality, *Zarate*

4

does not require it. Here, the process culminating in Manzanarez-Santos' departure—which did not include an adjudication of inadmissibility but did include a jail and probation sentence conditioned in part on Manzanarez-Santos' immigration status—was "formal nonetheless," *Id.* at 1136 (citation omitted), and therefore sufficient to break his continuous physical presence.

To be sure, there are differences between *Zarate* and the instant case. For one thing, the petitioner in *Zarate* was arrested while attempting to reenter the United States without legal authorization, while here petitioner's arrest and conviction in state court did not stem directly from violation of the immigration laws. For another, in *Zarate*, the evidence of record included a Record of Deportable/Inadmissible Alien (Form I-213) stating that the petitioner falsely claimed US citizenship, while here the record contains no such official immigration documentation.

These differences, however, do not change my conclusion that Manzanarez-Santos' departure was "sufficiently formal to constitute a break in his otherwise continuous physical presence." *Zarate*, 671 F.3d at 1138 (alteration and citation omitted). As we acknowledged in *Zarate*, the evidence required to show a sufficiently formal departure "will vary from case to case." *Id.* at 1135. Here, Manzanarez-Santos returned to Mexico subsequent to a state court conviction and

5

sentencing process that was intertwined with the issue of his immigration status. On this record, I would hold the Board had substantial evidence to conclude Manzanarez-Santos' departure was sufficiently formal to break his continuous physical presence. Therefore, I respectfully dissent from part 1 of the majority's disposition.