**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SAIFUL ISLAM,<br><br>Petitioner,<br><br>v.<br><br>JEFFERSON B. SESSIONS III, Attorney General,<br><br>Respondent. | No. 15-71214<br><br>Agency No. A206-271-936<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 9, 2018
Pasadena, California

Before: CALLAHAN and NGUYEN, Circuit Judges, and BATAILLON,[**] District Judge.

Saiful Islam petitions for review of a Board of Immigration Appeals (BIA)

decision affirming the denial of his applications for asylum, withholding of

removal, and relief under the Convention Against Torture (CAT). We have

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, sitting by designation.

jurisdiction under 8 U.S.C. § 1252(a)(1), and we deny the petition.

1. We may grant the petition on due process grounds only if "(1) the proceeding was so fundamentally unfair that [the petitioner] was prevented from reasonably presenting his case, and (2) [he] demonstrates prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation." *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620-21 (9th Cir. 2011) (as amended) (internal citation and quotation marks omitted). Even if, as Islam alleges, the immigration judge (IJ) violated his due process rights by failing to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," *Jacinto v. INS*, 208 F.3d 725, 733-34 (9th Cir. 2002), Islam has failed to show prejudice. Islam has not made a plausible showing that, in a full and fair hearing, he would be able to show that his feared future persecution would be "committed by the government or forces the government is either unable or unwilling to control." *Knezevic v. Ashcroft*, 367 F.3d 1206, 1211 (9th Cir. 2004).[1] Because Islam has not shown that he could meet one of the requirements for asylum and withholding of removal, he cannot show a "plausible scenario[] in

---

[1] Members of the Awami League party are not necessarily government actors for the purposes of the asylum analysis. *Cf. Ahmed v. Keisler*, 504 F.3d 1183, 1196 (9th Cir. 2007) (characterizing the Awami League as "an entity that the government fails to control," and not as the government itself). Islam has also not persuasively shown that he could demonstrate the government's inability or unwillingness to protect him from harm, considering that the police assisted him on several occasions.

2

which the outcome of the proceedings would have been different." *See Tamayo-Tamayo v. Holder*, 725 F.3d 950, 954 (9th Cir. 2013) (quoting *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 496 (9th Cir. 2007) (en banc)).

2. The record does not compel the conclusion that Islam is entitled to asylum or withholding of removal. *See Afriyie v. Holder*, 613 F.3d 924, 931 (9th Cir. 2010) ("We grant the petition only if the evidence compels a contrary conclusion from that adopted by the BIA."). Although Islam assuredly suffered past harm in Bangladesh, including a beating and threats, his experiences "do not evince actions so severe as to compel a finding of past persecution." *Hoxha v. Ashcroft*, 319 F.3d 1179, 1182 (9th Cir. 2003). Islam also did not meet his burden of proving a well-founded fear of persecution, as he has not shown a "reasonable possibility" that he would suffer persecution on account of a protected ground without protection from the government. 8 C.F.R. § 1208.13(b)(2)(i). Inevitably, he also did not show "by objective evidence that it is more likely than not" he "will be subject to persecution" if removed. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430 (1987). Therefore, we deny the petition as to his applications for asylum and withholding of removal.

3. We also deny the petition as to Islam's request for relief under the CAT. The record does not compel the conclusion that Islam would more likely than not suffer torture in Bangladesh "at the instigation of or with the consent or

3

acquiescence of a public official or other person acting in an official capacity." 8

C.F.R. § 1208.18(a)(1).

**PETITION DENIED.**

*Islam v. Sessions*, No. 15-71214

BATAILLON, District Judge, dissenting:

I respectfully dissent from the majority's opinion. Saiful Islam, a native and citizen of Bangladesh, petitions for review of the Board of Immigration Appeals' (BIA) denial of asylum, withholding of removal, and protection under the Convention Against Torture. Islam fears harm by his uncle due to their political differences and by the Awami League (AL) due to his political opinion.

The BIA issued a decision on March 23, 2015. The BIA reviewed the findings of fact for clear error and all other issues de novo. The BIA, following the path of the immigration judge (IJ), found that the IJ's findings are not clearly erroneous. The basis of this finding revolved around the BIA's assumption that the real reason Islam was targeted was because of a land dispute with his uncle. However, I note that the BIA did not discuss the primary and central reason for this application, that this request for asylum is based on Islam's belief that he is being targeted by the party in control of Bangladesh. The IJ and the BIA focused most exclusively on what Islam failed to establish.

The standard of review of the BIA's decision that an alien has not established eligibility for asylum is whether it is supported by substantial evidence. *Wang v. Ashcroft,* 341 F.3d 1015, 1019-20 (9th Cir. 2003). Although the standard of review is deferential, an adverse credibility determination must be supported by ''specific,

1

cogent reason[s].'' *Gui v. INS,* 280 F.3d 1217, 1225 (9th Cir. 2002) (internal quotation marks and citations omitted). *Hoque v. Ashcroft,* 367 F.3d 1190, 1195 (9th Cir. 2004) (finding that IJ's determination that applicant was not credible was not supported by substantial evidence).

The record is clear that Islam, born and raised in Bangladesh, became involved in the Bangladesh Nationalist Party (BNP) as a college student and served as an active member for many years. He participated in demonstrations against the AL. The BNP was in power prior to 2008. The AL has held power since 2008, and the BNP is its primary political opposition. Islam's uncle, Abdus Sattar, is a leader of AL. Sattar's brother is a local police commander. Islam requested refuge in the United States in February, 2013. The IJ determined that Islam's petition should be denied, and the BIA agreed and dismissed his appeal. Islam contends the IJ acted as a partisan advocate and failed to help him develop his claims.

The record shows that in November of 2011, Islam was assaulted by six men who were known members of AL. In March of 2012, a group of AL members frequented Islam's store. Islam was asked to display AL literature and materials. He refused. Islam contends there was an attempted attack on him at that time. He states he called the police who arrived a long time after the attempted attack. On May 25, 2012, Islam was physically attacked by a group of AL members. He suffered injuries and the members of the group threatened to kill him. He indicates

the police refused to take a report, since the attack was conducted by the AL. He then went to Dhaka, Bangladesh were the police there took the report. It is his belief that the attack occurred because of both his political alliance and because his uncle wanted to take the land Islam inherited from his father. Islam testified that he had to live in many places in Bangladesh, until he fled the country in October of 2012. He lived in Brazil, was sent back to Bangladesh, and ultimately, although the facts regarding how and why are not entirely clear, was granted permanent residence in Mexico.[1] On February 13, 2014, he requested asylum in the United States.

Although ably represented by counsel on appeal, Islam appeared pro se at his immigration hearing. It is clear that during the immigration hearing, the IJ focused his questioning, almost exclusively, on all the issues dealing with the land dispute between Islam and his uncle. The immigration judge did not focus on or sufficiently develop the record for the important political claims alleged by Islam. For this reason, I believe Islam's due process rights were violated. "Immigration proceedings, although not subject to the full range of constitutional protections, must conform to the Fifth Amendment's requirement of due process." *Salgado-Diaz v. Gonzales,* 395 F.3d 1158, 1162 (9th Cir. 2005).

---

[1] According to Islam, he did not apply for permanent residency in Mexico. It is possible that a priest may have applied on his behalf.

The first issue in need of further development is whether the AL is really the government or a quasi-government organization. If the answer is yes, it appears that Islam has alleged sufficient persecution for his attacks. It is my belief that the IJ failed to develop the record with regard to the claims in this case. It is also clear that the IJ developed very little of the record as to Islam's fear of persecution, finding there was not harm from the government. The IJ viewed this as more of a domestic dispute over land between Islam and his uncle. When an alien appears pro se, "it is critical that the IJ scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Pangilinan v. Holder,* 568 F.3d 708, 709 (9th Cir. 2009) (internal quotation marks and citation omitted); *see also Jacinto v. INS,* 208 F.3d 725, 732-33 (9th Cir. 2000).

The IJ gave Islam 6 months prior to the adjudication hearing to find an attorney. Islam was unable to do so.[2] Even so, the duty to develop the record lies with the IJ. *See Tawadrus v. Ashcroft,* 364 F.3d 1099, 1105 (9th Cir. 2004) (quoting *Rios-Berrios v. INS,* 776 F.2d 859, 863 (9th Cir. 1985)). The IJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Jacinto v. INS,* 208 F.3d 725, 733 (9th Cir. 2002), quoting *Key v. Heckler,* 754 F.2d 1545, 1551 (9th Cir. 1985); *see also Agyeman v. INS,* 296 F.3d 871, 877 (9th Cir.

---

[2] This case is now part of the BIA pro bono appeal project, and Islam is now represented by legal counsel.

4

2002). The IJ asked virtually no questions regarding the political motivations, even though the IJ asked the question "So the problem in your life is your uncle who wants the property?" Islam replied that the "[m]ain problem is the political problem." The IJ asked no questions regarding Islam's uncle's party work and affiliation or involvement with the party. The IJ never followed up with why Islam had to hide in many different places. On the contrary, the IJ at times chastised Islam when answering the questions, used numerous leading questions, in addition to failing to develop the record.

Further, Islam contends that the IJ failed to act as a neutral fact-finder, but instead acted as a partisan adjudicator. Based on this record, I agree. The immigration judge cannot prejudge the case or act as a partisan in the matter, instead of serving as an impartial fact-finder. *See Colmenar v. INS,* 210 F.3d 967, 971 (9th Cir. 2000) (remanding asylum case for a new hearing where IJ did not act as neutral fact finder but as partisan adjudicator); *Castro-Cortez v. INS,* 239 F.3d 1037, 1049 (9th Cir. 2001) ("A neutral judge is one of the most basic due process protections.") "If the prejudice to the alien is sufficiently great, denial of the right to a full and fair hearing may violate the constitutional guarantee of due process." *Campos-Sanchez v. INS,* 164 F.3d 448, 450 (9th Cir. 1999). For example after intense questioning about why Islam did not return to Brunei, the IJ stated: "Well, you had a say in it. It strikes me that you weren't looking for help. You were looking to get to the United

5

States.  Because you had a place of refuge right near Bangladesh.  You didn't have to travel all of the way around the world."  The IJ then questioned Islam as to why he did not go to India, although it was relatively clear that Islam had no ties to India. He then questioned Islam at length about his travels to 15 countries over four months, and then concluded that Islam spent more time in Mexico than he disclosed, which the IJ interpreted to mean that Islam had resettled in Mexico and was therefore not eligible for asylum.  The IJ also questioned him extensively about his attempt to get into Brazil and Brazil's refusal to grant him asylum and his return to Bangladesh. After asking a series of questions, the IJ then asked:  "That was not my question. You need to listen to the question because when you don't answer the question, I wonder if you're hiding an answer.  All right?  So pay attention.  My question was what happened to you in the beginning, in the first place that prompted you to leave? There are similar admonishments found in the record after a series of sometimes disjointed questions and answers from the obviously language challenged Islam.

I believe that such a failure to develop the record and failure to provide appropriate guidance to Islam, and if anything, directing him away from the relevant inquiry, is a violation of Due Process.  *See Agyeman,* 296 F.3d at 884.  When viewing the cumulative incidents (two in 2012 and one in 2011), all of which involved the AL, it appears Islam incurred persecution.  Further, Islam filed at least two police

reports which substantiate his claims. Islam also testified that he has had some difficulty getting the police to take reports of his persecution.

Having determined that there is in fact a due process claim, I must also determine if prejudice exists. I agree with the majority that such a violation must cause him prejudice, "[b]ecause aliens appearing pro se often lack the legal knowledge to navigate their way successfully through the morass of immigration law, and because their failure to do so successfully might result in their expulsion from this country, it is critical that the IJ 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Dent v. Holder,* 627 F.3d 365, 373-74 (9th Cir. 2010). However, from a review of the record, I believe "the proceeding was so fundamentally unfair that [he] was prevented from reasonably presenting his case, and (2) [he] demonstrates prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation." *Ibarra-Flores v. Gonzales,* 439 F.3d 614, 620-21 (9th Cir. 2011). I likewise believe the IJ and BIA ignored much of Islam's testimony. *See Afriyie v. Holder,* 613 F.3d 924, 933 (9th Cir. 2010) (wherein the Ninth Circuit found that the BIA "ignored or misstated critical, individual evidence").

However, I cannot conclude lack of prejudice on this record, because the record is not fully developed. I would remand this case to the immigration judge (IJ) to determine if the Bangladesh government is or is not willing and able to protect

7

him from AL assaults. I would also order the immigration court to develop the record on whether Islam suffered past persecution at the hands of the AL (through his uncle or otherwise) or that he had a legitimate fear of persecution in the future. The argument that Islam failed to show prejudice in this case, is a circular one. It is difficult to show prejudice with an undeveloped record.

As stated herein, I believe the proceeding was fundamentally unfair, and Islam was unable to present his case. Because the development of the record is insufficient, it is difficult to determine if prejudice in fact exists. Islam should have been afforded a better opportunity to prove his past persecution and his fear that he would be persecuted in the future on account of a protected ground. *See* 8 U.S.C. § 1101(a)(42)(A). Although there might be two reasons or motives for Islam's persecution, he need only show that the political one is "one central reason". 8 U.S.C. § 1158(b)(1)(B)(i). Persecution is "an extreme concept, marked by the infliction of suffering or harm . . . in a way regarded as offensive." *Li v. Ashcroft,* 356 F.3d 1153, 1158 (9th Cir. 2004) (en banc) (internal quotation marks omitted). Islam has experienced physical harm on more than one occasion and has been victimized over a period of a few years. *See, e.g., Quan v. Gonzales,* 428 F.3d 883, 888 (9th Cir. 2005) (noting that persecution may be found "even where there are no long-term effects and the prisoner does not seek medical attention."); *Ahmed v. Keisler,* 504 F.3d 1183, 1194 (9th Cir. 2007). Islam experienced at least three

8

incidents of threatening and harmful behavior. The Ninth Circuit has previously found that three incidents can constitute the level of persecution necessary to show persecution. *See e.g., Bondarenko v. Holder,* 733 F.3d 899, 908-909 (9th Cir. 2013) (finding three detentions and one severe beating to constitute past persecution). Further, it is not necessary for the petitioner to establish that persecution in the future is a certainty, or even a probability. *Hoxha v. Ashcroft,* 319 F.3d 1179, 1184 (9th Cir. 2003). Only a ten percent chance of persecution will suffice in some cases to establish a well-founded fear of future persecution. *Al-Harbi v. INS,* 242 F.3d 882, 888 (9th Cir. 2001).

**ACCORDINGLY,** I would remand this case to the IJ to:

1. Fully develop the record;

2. Allow the petitioner the opportunity present evidence sufficient to determine whether the AL is an arm of the government or a quasigovernment actor;

3. Determine, based on the additionally developed record, if Islam suffered past persecution on the account of his political beliefs and/or political alignment;

4. Determine, based on the additionally developed record, if Islam has a well-founded fear of future persecution.